UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
) Criminal No. 08-10352-NG
v. )
)
RICHARD SCHWARTZ )
)

**SENTENCING MEMORANDUM OF UNITED STATES AS TO DEFENDANT RICHARD SCHWARTZ**

The United States, by and through the undersigned Assistant United States Attorney, hereby submits this Memorandum for the Court outlining its position with regard to the appropriate sentence for defendant Richard Schwartz in the above-captioned matter. As discussed below, taking into account the factors set forth in 18 U.S.C. § 3553, the government seeks a sentence of 12 months incarceration, a fine of $7,000, 24 months of supervised release, and $100 special assessment.

**A. Background**

The United States allows non-citizens to enter the United States to work for temporary periods of time. Skilled nonimmigrant workers can enter the United States on a visa known as an H-1B Nonimmigrant Visa ("H-1B Visa"). H-1B Visa applicants apply at their local U.S. embassy or consular office. The consular officer may grant or deny an H-1B Visa to a nonimmigrant worker based on the information provided in their official application, an interview of the applicant, or because of the presence (or lack thereof) of supporting documentation, including letters of employment from the sponsoring employer.

Here, the defendants conspired to create phony letters from the Commonwealth of

Massachusetts that falsely stated that workers attempting to enter the United States from other countries on H-1B Visas were employed by the Commonwealth of Massachusetts when, in fact, they were not. The letters were submitted to the United States Consulate Offices in India in support of petitions for visas to enter the United States. All the fraudulent letters were submitted on behalf of individuals who were applying for H-1B Visas for Reddy or Rani companies.

The letters were originally drafted by Naidu and Reddy. Reddy and Naidu had discussed that Reddy was having trouble getting employment letters in support of H-1B candidates. Naidu offered to help Reddy secure letters and drafted a "form" letter and provided it to Reddy. Reddy inserted the names of the individuals applying for H-1B visas into the letter and gave a disk with fourteen letters back to Naidu. Through his business relationship with the Commonwealth, Naidu knew Richard Schwartz at the Department of Workforce Development ("DWD"). Schwartz agreed to print out the letters on Commonwealth letterhead and sign on behalf of the Commonwealth for a payment of $500 per letter, or $7,000. Naidu provided the disk to Schwartz to print out on Commonwealth letterhead and sign.

Except for the name on the letter, each of the 14 letters was exactly the same and utterly false. Each letter began:

> This letter is to confirm that the Commonwealth of Massachusetts -- Department of Workforce Development (DWD) will be contracting for the services of [insert name] as a Programmer Analyst to work on a project at our facility located at 19 Staniford Street, Boston, MA 02114.

The letter later became specific about what project the applicant would be working on:

> [Insert name] will be working on a project called UI/Revenue E-Governmet Project for Division of Unemployment Assistance (ASP/COM) . . .

The letter ends by stating: “The contract for [insert name]'s service is indefinite in duration.”

The letters were all signed "Richard M. Schwartz, IT Project Leader, The Commonwealth of Massachusetts Department of Workforce Management." None of the individuals, of course, had positions at the Commonwealth of Massachusetts, none were going to work on the UI/Revenue E-Governmet Project for Division of Unemployment Assistance (ASP/COM). Indeed, the entire letter is a fabrication for one purpose – to assist illegal entry into the United States. DWD determined that the letters were fraudulent because Richard M. Schwartz was not an IT project leader and had no authority to issue or sign the letters.

Both Reddy and Naidu admitted at their pleas before this Court that on February 11, 2008, Naidu, Schwartz and Reddy met at a local restaurant. Naidu facilitated the meeting. At that meeting, Schwartz provided the final version of the letters (on Commonwealth letterhead and signed) to Reddy in exchange for $7,000 in cash from Reddy. Contrary to defendant Schwartz's claims that there is no other evidence of this payment, documents do confirm that the meeting took place. The government produced to the defendant a bill from the Kinsale restaurant for $87.10 on February 11, 2008 which corroborates Naidu's and Reddy's independent versions of the meeting, including the time of the meeting and the items ordered. Moreover, the credit card that was used on the bill matches Reddy's credit card and appears on his monthly credit card statement.

**B. Abuse of Trust**

There is no doubt that the position of trust enhancement applies in this case. Despite the defendant’s attempts to dismiss Application Note 3, it is clearly applicable. Application Note 3 applies when the defendant provides sufficient indicia to the victim (the United States) that the defendant legitimately holds a position of public trust (an employee of the Commonwealth of

Massachusetts responsible for managerial supervision of the IT Department) when, in fact, the defendant does not. The Ninth Circuit has stated that "[i]n order for § 3B1.3 to apply, then, [the defendant] must have (1) purported to hold a position characterized by "professional or managerial discretion" and (2) provided his victim with "sufficient indicia" that he legitimately held such a position." *United States v. Nguyen*, 386 Fed. Appx. 675, 677 (9th Cir. 2010). Both of these criteria are met here.

With respect to the first element, Schwartz held himself out to be an IT Supervisor that could hire and fire potential employees. He stated in each of his fake letters that "the contract . . . is indefinite in duration," implying that he had control of the length of the contract. He also referred anyone with questions to himself.

The second element is also satisfied. Schwartz gave the United States and the potential H-1B applicants who had no awareness of Schwartz's lies, the belief that he actually held a position of public trust. Schwartz achieved this trust by placing his letter on Commonwealth of Massachusetts letterhead and enhancing his title. Such acts fall squarely within the enhancement's plain meaning.

The defendant argues that the abuse of trust enhancement cannot apply to an imposter who does not actually hold a position of trust. That argument is simply wrong. The historical notes to Application 3 make clear that:

> The purpose of [Application Note 3] is to establish that the two-level increase for abuse of a position of trust applies to a defendant **who is an imposter, as well as to a person who legitimately holds and abuses a position of trust**. This amendment resolves a circuit conflict on that issue. *Compare United States v. Gill*, 99 F.3d 484 (1st Cir.1996) (adjustment applied to defendant who posed as licensed psychologist), and *United States v. Queen*, 4 F.3d 925 (10th Cir.1993) (adjustment applied to defendant who posed as financial broker), cert. denied, 510 U.S. 1182, 114 S.Ct. 1230, 127 L.Ed.2d 575 (1994), *with United States v. Echevarria*, 33 F.3d 175 (2d Cir.1994) (defendant who poses as

> physician does not occupy a position of trust). **The amendment adopts the majority appellate view and provides that the abuse of position of trust adjustment applies to an imposter who pretends to hold a position of trust when in fact he does not**. The Commission has determined that, particularly from the perspective of the crime victim, an imposter who falsely assumes and takes advantage of a position of trust is as culpable and deserving of increased punishment as is a defendant who abuses an actual position of trust.

*See United States v. Ghertler*, 605 F.3d 1256, 1265 (1010) (quoting U.S.S.G. § 3B1.3, Historical Notes, 1998 amend.). Put simply, whether Mr. Schwartz was an IT Supervisor or just pretending to be one is the same for applying the abuse-of-trust enhancement. He used his position to create authority for himself in order to facilitate the entry of non-immigrants into the United States.

## C. Fake Employment Letters are Documents under USSG § 2L2.1(b)(2) because they were "involved" in the offense

The defendant now claims without any legal support that the fake letters he created for the purpose of helping foreign workers enter the country are not "documents" under the Sentencing Guidelines because under 18 U.S.C. § 1546, they are not required by statute or regulation. Under the §2L2.1(b)(2), however, requires all documents "involved" in the offense.

Fundamentally, however, the defendant is wrong to look to the statutory language for the definition of "documents" in the §2L2.1(b)(2). The issue was presented in *United States v. Singh*, 335 F.3d 1321 (11th Cir. 2003). In *Singh*, the Eleventh Circuit held that the term "documents" in should be read to include all documents "involved" in the offense, not just documents that fall within the statutory language. *Id*. at 1324. The Eleventh Circuit held that "[t]he language of § 2L2.1(b)(2) is clear: the sentencing court is directed to count any documents or passports that are "involved" in the offense," not just those that strictly fall within the statutory language. Singh involved a violation of 18 U.S.C. § 1028 which defines an "identification document" as "a document made or issued by or under the authority of the United

States Government, a State, political subdivision of a State, a foreign government, political subdivision of a foreign government, an international governmental or an international quasi-governmental organization which, when completed with information concerning a particular individual, is of a type intended or commonly accepted for the purpose of identification of individuals." 18 U.S.C. § 1028(d)(2). The defendant in *Singh* created false driver's licenses, military identification cards, and United States government identification cards all of which fell outside § 1028's broad definition of "identification documents." However, the Eleventh Circuit agreed they should be counted for purposes of § 2L2.1. *See also, United States v. Castellanos,* 165 F.3d 1129 (7th Cir. 1999) ("We therefore conclude ... that Congress intended blank, incomplete identification documents to come within the statutory definition of "identification document" for purposes of § 1028(d)(1). We therefore agree with the district court's determination that all of Mr. Castellanos' documents, whether completed or blank, ... could count for sentencing enhancement purposes under § 2L2.1"). The Eleventh Circuit clearly held that all documents "involved" not just those that fall within the statutory language count under § 2L2.1(b)(2).

Even if the Court were to reject the Eleventh Circuit's sound reasoning, the defendant still is incorrect because the employment letters in this case are required by regulation.[1] Pursuant

[1] In *United States v. Yong Ping Liu*, 288 Fed. Appx. 193 (5th Cir. 2008), the defendant submitted a forged employment letter for a client, who sought to extend a B-1 visa. *Id.* at 196-97. One of the court's notes in that case implies that, when a document is commonly used for a certain immigration purpose even though not necessary for it, it falls under the statute. *Id.* at 198 n. 3 ("The jury heard the testimony of an adjudications officer with the CIS, who noted that although such a letter does not need to be from the applicant's employer, the most common form of documentation used to support a visa extension request is a letter from a foreign employer."). Both the district court and the appeals court treated the employment letter as clearly falling within the prohibition of the statute. In *United States v. Pineda*, 692 F.2d 284 (2d Cir. 1982), the

to the Code of Federal Regulations, consular officers have the authority to “require documents considered necessary to establish the alien's eligibility to receive a nonimmigrant visa.” 22 C.F.R. § 41.105. Indeed, in this case, the U.S. Consulate in Chennai (where the letters were submitted) did require employment letters are one such required document (thus requiring them by regulation) without which H-1B visas would not be granted. *See* Exhibit 1 (“If you are applying for an H-1B visa, you need to present all the required documents for any non-immigrant visa plus [a] . . . [l]etter from petitioning employer confirming employer’s intent to hire the applicant”) .

Thus, the Court should apply the 3 point enhancement because “the offense involved six or more documents.” USSG § 2L2.1(b)(2)(A).

---

defendant conducted a false document mill to help people with immigrant visas for their relatives. The Second Circuit noted that "[a]pplicants typically submit affidavits expressing willingness to support the immigrant, letters of employment, copies of tax returns and IRS W-2 forms, and bank letters reporting the petitioner's account balances." Id. at 285. The defendant provided forgeries of such documents. While searching the defendant's office, agents found fake employment letters and other documents. The documents formed the basis for a conspiracy charge against the defendant. See also, *United States v. Dorcant*, 370 Fed. Appx. 289 (3rd Cir. 2010) (upholding the enhancement for 25 to 99 documents based, at least in part, on supporting documents).

**D. Conclusion**

The Court should calculate the defendants guideline offense level at 13 (16 minus 3 points for acceptance of responsibility). As a result, the Court should sentence the defendant to 12 months incarceration, 2 years of supervised release, a fine of $7,000 and a $100 special assessment.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By: */s/ Jeffrey M. Cohen*
Jeffrey M. Cohen
Assistant United States Attorney

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participates as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on the above date.

*/s/ Jeffrey M. Cohen*
Date: April 22, 2011 Jeffrey M. Cohen